**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1.  ELIZABETH WALLACE,              )<br>                                                         )<br>         Plaintiff,                            )<br>                                                         )<br>*versus*                                            )          Case No. CIV-12-310-HE<br>                                                         )<br>2.  ALLSTATE INSURANCE COMPANY,  )<br>3.  SUMMIT CLAIM AND APPRAISAL,   )<br>INC.,                                                 )<br>                                                         )<br>         Defendants.                         ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, Elizabeth Wallace (hereinafter "Plaintiff"), for her claims against Defendants, Allstate Insurance Company (hereinafter "ALLSTATE"), and Summit Claim and Appraisal, Inc. (hereinafter "SUMMIT"), states as follows:

1.  Plaintiff is resident of Altus, located in Jackson County, Oklahoma.

2.  Defendant ALLSTATE is a corporation incorporated under the laws of the State of Illinois, with its principle place of business in the state of Illinois.

3.  Defendant SUMMIT is a corporation incorporated under the laws of the State of Oklahoma with its principle place of business in Oklahoma City, Oklahoma. Inasmuch as Summit is an Oklahoma corporation, there does not exist complete diversity of citizenship as between the Plaintiff and the Defendants, and Plaintiff alleges diversity jurisdiction does not exist.  Further, Plaintiff contends there exists no federal question which would vest jurisdiction in this Court.  Plaintiff alleges, therefore, this Court is without jurisdiction, and that this cause should be remanded to the District Court in and

for Jackson County, wherein it was originally filed, and would still be pending but for its improvident removal by Defendant Allstate.[1]

4. Plaintiffs entered into a "Deluxe Plus Homeowners Policy" contract of insurance with Defendant ALLSTATE to provide coverage for her residence and household contents. Plaintiff's insured property is located in Jackson County, Oklahoma.

5. Thereafter, Defendant, ALLSTATE issued the "Deluxe Plus Homeowners Policy" of insurance (Policy No. 0 95 672802 08/11) to the Plaintiff.

6. On information and belief, Plaintiffs contend Defendant ALLSTATE has a contractual relationship with Defendant SUMMIT to provide claim adjustment and related services.

7. Commencing prior to 2010, Allstate initiated a home reinspection process for all properties in Oklahoma. Allstate ordered a property reinspection of Plaintiff's property on November 8, 2010. Said inspection occurred on November 23, 2010. As a result of the inspection, Allstate determined an "unacceptable hazard or condition" on Plaintiff's property which, if not corrected prior to renewal, would result in the policy being non-renewed. The specific "hazard" or "condition" identified by Allstate was the roof of Plaintiff's insured property, which Allstate determined was "buckled" and "lifting and curling." Allstate uses a 1 to 4 roof rating scale, with 1 being the best. Roofs categorized as 1, 2 or 3, are repairable. Roofs categorized as a 4 on the scale are deemed in need of replacement. Plaintiff's roof was characterized as a "3" on the Allstate scale.

---

1 Plaintiff's Motion to Remand, Doc. 22, is currently pending at this time. Plaintiff seeks remand of this case based on lack of jurisdiction, given Defendant Summit's Oklahoma citizenship.

Allstate provided "Advance Notice of Non-Renewal: Action Required" to the Plaintiff advising her of the results of the Property Reinspection and the need for her to take action to correct the condition prior to renewal.

8.      Plaintiff's property had been continuously insured by Allstate for the preceding 21 years.  The subject policy included replacement cost coverage for the property's roof.  Plaintiff's property had sustained damage as a direct result of an ice storm on or about January 28, 2010.  Accordingly, after receiving notice of the inspection results, Plaintiff submitted a claim for such damage to Allstate, including a claim for damages to the roof resulting from the ice storm.

9.      Defendant ALLSTATE chose to submit and assign Plaintiff's claim to Defendant SUMMIT for adjustment.

10.     Thereafter, Defendants ALLSTATE and SUMMIT confirmed Plaintiff's property had in fact sustained direct physical damage as a result of catastrophic storm which occurred on or about the 28th day of January, 2010, and that said loss was covered under the terms and conditions of Plaintiff's "Deluxe Plus Homeowners Policy" with ALLSTATE.  Specifically, Defendants concluded repairs to the roof were indeed necessary, and Allstate made payment to Plaintiff for said repairs.  Plaintiff made the repairs recommended by Defendants pursuant to the claims process.

11.     Thereafter, on May 2, 2011, Plaintiff's agent requested a "second-look inspection" to confirm the major conditions had been repaired.  The second-look inspection occurred on May 11, 2011, and was conducted by Defendant SUMMIT.  As a

result of said inspection, Allstate determined the repairs to the roof made as a result of the clams process were not sufficient and that the major conditions warranting non-renewal still existed. Following the results of the second look inspection, Plaintiff's agent requested Allstate revisit the claim. Defendant SUMMIT revisited the claim, and met with a roofing contractor arranged by Plaintiff. Defendant SUMMIT then submitted a supplemental report concluding the roof had sustained no additional covered damages. Allstate denied Plaintiff's claim for damages in total, and refused to renew the policy until the condition it identified was corrected. The policy was terminated August 11, 2011. Ultimately, Plaintiff replaced the roof at her own expense at a cost of $8,283.00.

12. Defendant SUMMIT owes a duty to Plaintiff to conduct a fair and reasonable investigation of her claim. Defendant breached the duty which it owed to Plaintiff by failing to conduct a reasonable and fair investigation of her claim. Plaintiff was injured and otherwise damaged as a direct result of SUMMIT's failure to conduct a reasonable and fair investigation of her insurance claim.

13. Despite and considering the above and foregoing, Defendant ALLSTATE has failed and/or refused to fully and fairly pay the claims of Plaintiff in accordance with the terms and conditions of their "Deluxe Plus Homeowners Policy" by engaging in the following acts and omissions:

    a)    Allstate violated its duty of good faith and fair dealing, by unreasonably, and in bad faith, refusing to pay the Plaintiff the proper amount for a valid claim under the insurance policy;

b) Allstate was required under the insurance policy to pay Plaintiff's claim for damages for her roof;

c) Allstate's refusal to pay the claim in full was unreasonable under the circumstances because:

    1. Allstate failed to perform a thorough and proper investigation;

    2. Allstate had no reasonable basis for the refusal to replace Plaintiff's roof;

    3. Allstate did not deal fairly and in good faith with Plaintiff; and

    4. Allstate's violation breach of duty of good faith and fair dealing was a direct cause of the injury sustained by the Plaintiff.

14. The conditions found on the "renewal inspection" occurred during the period Plaintiff's roof were covered under her policy with Allstate.

15. Allstate wrongfully and constructively terminated Plaintiff's policy of insurance by failing to renew said policy for the reasons referenced herein.

16. Allstate intentionally targeted homes in Oklahoma insured pursuant to homeowners insurance policies providing replacement cost coverage for roofs.

17. Allstate used outcome oriented inspections designed to support its decision to non-renew for the presence of a substantial change or increase in hazard in the risk originally accepted.

18. Defendant ALLSTATE purposefully, wrongfully and repeatedly withheld benefits due under the terms and conditions of their insurance policy;

19. The conduct of Defendant ALLSTATE, as described above, constitutes bad faith and is a material breach of the terms and conditions of the insurance contract between the parties, and constitutes a breach of fiduciary duty owed by Defendant to the Plaintiff.

20. As a direct result of Defendant ALLSTATE's wrongful conduct, Plaintiff's claim was unnecessarily delayed, inadequately investigated, wrongly underpaid and/or unfairly denied. Said actions resulted in additional profits, and financial windfall, for Defendant ALLSTATE, and Allstate was unjustly enriched as a result of said wrongful conduct.

21. As a result of the conduct of Defendants ALLSTATE and SUMMIT, Plaintiff has sustained financial losses, mental and emotional distress and have been damaged in an amount in excess of seventy-five thousand dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

22. The conduct of Defendants ALLSTATE and SUMMIT was intentional, willful, malicious and in reckless disregard of the rights of Plaintiff. Furthermore, Defendants' conduct was part of an overall plan or scheme designed to, and which in fact did, result in increased profits. Plaintiff alleges that Defendants' conduct, as described herein, reflects intentional, wrongful or reckless behavior of a sufficiently egregious nature so as to warrant the imposition of punitive damages.

23. Further, Plaintiff alleges Defendant ALLSTATE enjoyed increased financial benefits and ill gotten gains as a direct result of the wrongful conduct described

above herein, which resulted in the injury to Plaintiff.

## **PRAYER FOR RELIEF**

**WHEREFORE**, premises considered, Plaintiff prays for judgment in her favor

and against Defendants ALLSTATE and SUMMIT for:

a)      Payment for all contractual benefits for all coverages afforded to Plaintiff

under the subject Allstate policy for damage to her insured residence and personal

contents caused by January 28, 2010, ice storm, with interest on all amount due;

b)      Compensatory damages for intentional infliction of emotional distress,

embarrassment and loss of reputation, and mental pain and suffering;

c)      Disgorgement of the increased financial benefits derived by any and/or all

of the Defendants as a direct result of the conduct causing injury and damages to Plaintiff;

d)      Actual and punitive damages in an amount in excess of $75,000.00; and,

e)       Prejudgment interests, costs and a reasonable attorney's fee.

        Respectfully submitted,


        s/ JEFF D. MARR
        Jeff D. Marr (OBA No. 16080)
        MARR LAW FIRM
        4301 Southwest Third Street, Suite 110
        Oklahoma City, OK 73108
        Telephone: (405) 236-8000
        Facsimile: (405) 236-8025
        Email: jeffdmarr@marrlawfirm.com

           *-and-*

        Jo L. Slama (OBA No. 13426)
        Steven R. Davis (OBA No. 14401)
        SLAMA LEGAL GROUP
        4301 Southwest Third Street, Suite 100
        Oklahoma City, OK 73108
        Telephone: (405) 609-1600
        Facsimile: (405) 609-1601
        Email: jo@slamalegal.com
                steve@slamalegal.com
        ***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 16th day of April, 2012, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Richard E. Hornbeek
Hornbeek, Vitali & Braun
3711 N. Classen Blvd.
Oklahoma City, OK 73118
Telephone: (405) 236-8600
Facsimile: (405) 236-8602
Email: hornbeek@hvblaw.com
*Attorney for Defendant, Summit Claim and Appraisal, Inc.*

John Gladd
Andrew Jayne
Galen Brittingham
Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile
525 South Main, Suite 1500
Tulsa, OK 74103
Telephone: (918) 582-8877
Facsimile: (918) 585-8096
Email: gbrittingham@ahn-law.com
*Attorneys for Defendant, Allstate Insurance Company*

            s/ JEFF D. MARR
            JEFF D. MARR